In re Morton A. GOLDBERG, Debtor.

Goldstein, Buckley, Cechman, Rice & Purtz, P.A., f/k/a Goldberg, Goldstein & Buckley, P.A., Plaintiff,

v.

Morton A. Goldberg, Defendant.

Bankruptcy No. 97–12898–9P1.
Adversary No. 97–944.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

March 17, 1999.

Jeffrey W. Leasure, Fort Myers, FL, for plaintiffs.

Geoffrey S. Aaronson, Miami, FL, Stanford Solomon, Tampa, FL, for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

The controversy in this Chapter 11 case filed by Morton A. Goldberg (Debtor) carries all the hallmarks of a Greek tragedy and it is a paradigm of an old truism that higher they rise, further they fall as a result of events unanticipated by the parties involved.

The matter presented for this Court's consideration is a two-count Complaint, filed by Goldstein, Buckley, Cechman, Rice

& Purtz, P.A. (Plaintiff) in which the Plaintiff seeks a determination that the debt claimed to be owed by the Debtor to the Plaintiff in excess of $2,100,000 shall be excepted from the protection of the overall bankruptcy discharge pursuant to Section 523(a)(4) (embezzlement) and pursuant to Section 523(a)(6) (conversion). The Plaintiff also filed two claims in this Chapter 11 case. The first is in the amount of $2,043,-102.13, contended to be a liquidated claim for moneys allegedly embezzled by the Debtor, and the second is filed as an unliquidated claim for damages arising from the same embezzlement.

In due course the Debtor filed his Answer coupled with some affirmative defenses and a Counterclaim. In his Answer, the Debtor denied that he is indebted to the Plaintiff in any amount as a result of an accord and satisfaction, settlement, and waiver by the Plaintiff. In his Counterclaim, the Debtor alleges that the Plaintiff breached the Retirement Agreement entered into between the parties prior to the commencement of the Chapter 11 case and, based on that breach, the Debtor now seeks damages in excess of $1 million from the Plaintiff.

The Plaintiff filed an Answer (sic), treated as a reply, coupled with Affirmative Defenses to the Counterclaim alleging a setoff and fraud in the inducement. This Court consolidated for trial the Debtor's objection to the two claims filed by the Plaintiff, the claims of the Plaintiff set forth in its Complaint, and also a Motion to Estimate the Claim filed by the Plaintiff that relates to the unliquidated claim filed by the Plaintiff.

At the duly scheduled final evidentiary hearing, the Court heard testimony of witnesses and, having considered the entire record including the documentary evidence offered and admitted into evidence, now finds and concludes as follows:

The Debtor was the founding member of the Ft. Myers law firm of Goldberg, Rubinstein & Buckley, P.A. Sometime in the early 1980's when Rubinstein left the Law Firm, it became known as Goldberg, Goldstein & Buckley, P.A. The Law Firm is presently called Goldstein, Buckley, Cechman, Rice & Purtz, P.A. For most of its existence, the Law Firm practiced under the name Goldberg, Goldstein & Buckley, P.A.

The Debtor was the majority shareholder in the Law Firm until his resignation on October 1, 1995. From December, 1976, until December 31, 1994, the Debtor was solely responsible for the management of the Law Firm. The Debtor was also responsible for insuring that the fees earned by the Law Firm were collected and deposited into the firm's operating account. Every Thursday, each attorney would submit a list of the matters for which they received fees together with the checks. Each attorney had a separate trust account for personal injury recoveries, from which trust account checks would be prepared payable to the Firm. The attorneys fee sheet, together with either the client's checks or trust account checks, would be delivered the Debtor's secretary. The secretary would double check the amounts of the checks and the sheets and deliver the checks and sheets to the Debtor. The Debtor would then note each attorneys collections to determine who was generating fees for the firm. The Debtor would, thereafter, deliver the checks to another secretary to be deposited into the Firm's operating account. After the checks were deposited into the operating account, Mr. Goldberg would return the sheets to the first bookkeeping secretary to prepare a sales tax report.

The Debtor was solely and exclusively in charge of and responsible for all aspects of the Law Firm's financial affairs. He determined compensation for all attorneys in the Law Firm, including his own. He determined bonuses, and he supervised the maintenance of the trust and operating accounts maintained by the Law Firm. He supervised the collection of all accounts

receivables and payment of all accounts payable.

Unfortunately, the Debtor did not limit his activities to practicing law and became involved extensively in some land development ventures in the Ft. Myers area. And, as a result, in 1994 and 1995, the Debtor and the Law Firm were sued by various groups of investors who were disappointed and claimed to have been cheated in connection with their investments in the land acquisitions arranged by the Debtor.

In December 1994 when faced with his mounting legal problems, the Law Firm created a management committee that consisted of Harvey Goldberg (H.Goldberg), the brother of the debtor; Ray Goldstein; Steve Buckley; John Cechman; Jeff Rice; and Richard Purtz. Thereafter, the management committee was responsible for the Law Firm's day-to-day operation. It appeared by late December that it would benefit all if the Debtor resigned from the Law Firm. The Debtor and his attorney began to negotiate the draft Retirement Agreement. Prior to the execution of the Retirement Agreement the Debtor admitted that he had improperly taken approximately $40,000 from the Law Firm, which he was not authorized to take, and that he took, such funds to pay off gambling debts. The Law Firm elected not to pursue him by suing him on the pending charges against him because of mounting legal problems facing the Debtor and possibly the Law Firm itself.

On October 1, 1995, the Retirement Agreement was executed by the parties. The purpose of the Retirement Agreement was to provide the Debtor compensation and other benefits such as certain health insurance coverage, certain life insurance policies, and payment of severance wages in the amount of $10,000 a month for seven years. In addition, the Law Firm agreed to redeem the Debtor's stock in the Law Firm in return for payments over a period of seven years.

The Retirement Agreement also included a setoff provision providing, *inter alia,* that the "Firm shall be entitled to an immediate dollar for dollar setoff as against any and all remaining benefits that may be due Goldberg hereunder ...". The set off provision is based on the Firm's sustaining "any damage or loss ... by virtue of any present or past action or inaction of Goldberg affecting the Law Firm." The paragraph defines that the term "actions or inactions of Goldberg affecting the Law Firm" includes, but shall not be limited to all pending civil lawsuits as against Goldberg, all civil lawsuits that may be filed in the future against Goldberg, arising out of any land transaction, trust transaction, or business transaction involving Goldberg personally, or in his capacity as a member of the Law Firm, any action in which the Law Firm may be joined by virtue of actions or omissions by Goldberg during his ten years with the Law Firm, all criminal proceedings or investigations that may be commenced against Goldberg, all proceedings by the Florida Bar that may be commenced against Goldberg, and any and all other judicial government or administrative, *quasi* judicial or *quasi* administrative proceedings that may be instituted against Goldberg, or the Law Firm, arising out of Goldberg's actions, inactions, or conduct while a member of the Law Firm. The term "actions or inactions of Goldberg affecting the Law Firm" specifically excluded negligent legal malpractice committed by the Debtor in the past.

In addition, to add to the woes of the Law Firm, the Debtor also became a target of a federal criminal investigation connected with his activities relating to these land acquisitions. As a result of the investigation, the Debtor was indicted by the Federal Government and charged with money laundering and mail fraud under 18 U.S.C. § 1951 and 18 U.S.C. § 1341, respectively. The mail fraud count of the indictment related to the Debtor's activities in connection with the land trusts and

use of the mail to solicit investments. The money laundering count was based on the Debtor's admitted embezzlement from the Law Firm, which he acknowledged to be at the time to be in excess of $1 million.

Some time prior to November 20, 1995, the Debtor and his lawyer informed the Law Firm that he was prepared to plead guilty to embezzling in excess of $1 million from the Law Firm between January 1, 1989, and December 31, 1994.

On November 20, 1994, the Debtor did, in fact, plead guilty in District Court to one count of mail fraud and one count of money laundering. When the guilty plea became public, the Management Committee authorized Mr. Jeff Rice (Rice), a partner in the Law Firm, to submit a letter to the Debtor concerning the embezzlement and its effect on the Retirement Agreement. (Plaintiff's Exh. 26). The letter indicated that the Law Firm was exercising its right to set off pursuant to the terms of the Retirement Agreement and unilaterally modified the Retirement Agreement. Notwithstanding the contents of the letter, the Law Firm continued to honor its obligations under the Retirement Agreement while the parties attempted to negotiate a modification of the Retirement Agreement. The negotiations bore no fruit, and no modification agreement was ever signed by the parties. The Debtor received payments under the Retirement Agreement until May 1, 1995, but did not receive any payments thereafter.

On April 19, 1996, the District Court scheduled sentencing for the Debtor. At the sentencing hearing it was disclosed that the amount embezzled by the Debtor was in excess of $2.1 million, and not as originally stated either initially or later.

At the sentencing hearing, two members of the Law Firm testified on behalf of the Debtor and also submitted a letter to the Court dated February 20, 1996, in an attempt to obtain a lighter sentence for the Debtor. (Plaintiff's Exh. No. 2) In the letter, the Firm partners, Mr. Buckley, and Mr. Goldstein agreed to waive, on behalf of the Law Firm, the Court ordered restitution to the Law Firm. The District Court sentenced the Debtor for incarceration for not less than 51 and not more than 63 months in the Federal Correctional Institute. As a result of a plea agreement, the Debtor was required to amend tax returns for the years 1989 through and including 1994. (Plaintiff's Exh. 9 – 14). To accomplish this, the Debtor and his attorney prepared a schedule of the amount he acknowledged to have embezzled from the Law Firm for the years in question. (Plaintiff's Exh. 23). The amounts admitted by the Debtor that were embezzled from the Law Firm totaled $2,239,392.60. The Debtor's accountant, Robert Stewart, prepared Amended Tax Return that disclosed the otherwise unreported income.

As a result of the Defendant's embezzlement from the Law Firm, the Law Firm was required to prepare and file State and Federal Amended Income Tax Returns and, in addition to the amounts paid to the taxing authorities, the Law Firm was also forced to retain and hire professionals as a direct result of the Debtor's embezzlement and his activities with respect to the fraudulent real estate transfers. The Law Firm paid to the professional a total of $692,-720.22.

The Law Firm is also a named Defendant in two lawsuits where it is alleged by the Plaintiff that, as a result of his activities while employed by the Law Firm, the Law Firm became liable for $2 million with respect to the secret profits in real estate transfers. Based on the foregoing, it is the Plaintiff's contention that the Debtor is indebted to the Plaintiff in the amount of $2,932,112.00, plus an estimated claim of $2 million.

At the conclusion of the evidentiary hearing, this Court announced that unless this Court finds that the Plaintiff effectively waived all of its claims against the Debtor, the amount of indebtedness would be

declared to be nondischargeable pursuant to 523(a)(4) (embezzlement).

Thus, the sole remaining issue in this case is whether or not the Law Firm knowingly unconditionally waived its rights to the restitution ordered by the District Court when it sentenced the Debtor. The Firm asserts that it waived its rights to restitution solely to influence the court and obtain lenient treatment of the Debtor when sentenced. The Law Firm asserts that, notwithstanding the February 20, 1996, Agreement and its representations to the District Court, they are not prevented from proceeding with its claim in this Court, because the agreement to waive was not granted unconditionally but was filed with the District Court for a specific but limited purpose.

In contrast, the Debtor asserts that there was an unconditional waiver memorialized in the February 20, 1996, Agreement and confirmed by Goldstein and Buckley before the District Court. The Debtor asserts that the waiver applies to any claim for restitution, embezzlement, conversion or willful and malicious injury or any other characterization of the claim.

■ Considering first the first affirmative defense, accord and satisfaction, this Court is satisfied that it is not supported by the record. The only evidence with respect to any conversations between the Debtor and members of the Law Firm prior to the execution of the Retirement Agreement was the conversation between the Debtor and Mr. Rice and Harvey Goldberg (the Debtor's brother) with respect to his misappropriation of approximately $40,000.00. This is the only evidence in this record that would support the Debtor's affirmative defense of accord and satisfaction. Based on this testimony, it is clear that the Plaintiff had no knowledge of the extent of Mr. Goldberg's embezzlement until the sentencing hearing on April 19, 1996, and certainly not prior to October 1, 1995, when the Retirement Agreement was executed by the parties.

■ The second affirmative defense asserted by the Debtor is settlement. Again the record is devoid of any evidence in this record that warrants to conclude that the Debtor disclosed the extent of his embezzlement to the Law Firm. There is no evidence that would support the affirmative defense raised by the Debtor that the parties settled their claims between them as a result of the Retirement Agreement entered into n October 1, 1995. Since the Plaintiff had no knowledge of the extent of the Debtor's embezzlement until after October 1, 1995, there could not have been a settlement because all facts relevant to the extent of the embezzlement were not known.

The last affirmative defense of waiver is based solely on the February 20, 1996, letter from the Law Firm to the Debtor signed by Mr. Buckley and Mr. Goldstein.

■ The burden of proof with respect to this affirmative defense is also on the Debtor. A waiver occurs only when there is an intentional relinquishment of a known right. *See In re Garfinkle,* 672 F.2d 1340 (11th Cir.1982); *Florida House of Representatives v. The United States Department of Commerce,* 961 F.2d 941 (11th Cir.1992).

■ This record leaves no doubt that the letter presented to the District Court at the sentencing hearing in which the Law Firm waived the Court ordered restitution of the funds that the Debtor admitted to have embezzled was made solely for the purpose of influencing the Court to go light on the Debtor and minimize or reduce the sentence the court was about to impose. There is no question that this was not a general release of all claims, and a fair reading of this document does not permit the conclusion that the Law Firm willingly gave up a known right to assert against the Debtor for damages it suffered as a result of the admitted embezzlement of $2 million from the Law Firm.

■ This leaves for consideration the Debtor's Counterclaim in which he con-

**175**

tends that the Law Firm breached the Retirement Agreement and that, therefore, he is entitled to unspecified amount of damages which, most likely, refers to the unpaid amount of the installment payments provided for by the Retirement Agreement. At the time the Retirement Agreement was entered into, the Law Firm was only aware of the misappropriation of $40,000, and the Debtor did not reveal the fact that he already embezzled in excess of $2 million from the Law Firm prior to entering into the Retirement Agreement. It defies common sense to accept the proposition urged by the Debtor that the Law Firm would have entered in a lucrative retirement package agreeing to pay $10,000 a month for seven years, provide health and life insurance policies to the Debtor and, also redeem his shares in the Law Firm when it was already inferred that the Debtor's embezzlement was in excess of $2 million. This omission was no doubt crucial and was instrumental in inducing the Law Firm to agree and provide for an amicable departure of the Debtor from the Law Firm in light of the representation that the only amount taken from the Law Firm unlawfully was $40,-000.

Considering the evidence in toto, this Court is satisfied that the Debtor failed to establish with the requisite degree of proof accord of satisfaction or a known waiver of its rights.

A separate Final Judgment will be entered by this Court in accordance with the foregoing.

### FINAL JUDGMENT

THIS CAUSE came on for consideration upon the Court's own motion for the purpose of entering a final judgment in the above-captioned adversary proceeding. The Court considered the record and finds that Findings of Fact, Conclusions of Law and Memorandum Opinion has been entered and that, therefore, it is appropriate to enter a final judgment.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that judgment is hereby entered in favor of the Plaintiff, Goldstein, Buckley, Chechman, Rice & Purtz, P.A., f/k/a Goldberg, Goldstein & Buckley, PA., and against the Defendant, Morton A. Goldberg as to Count I of the Complaint. The debt owed by the Defendant is hereby declared to be nondischargeable pursuant to 11 U.S.C. § 523(a)(4). It is further

ORDERED, ADJUDGED AND DECREED that judgment is hereby entered in favor of the Defendant and against the Plaintiff as to Count II of the Complaint. Count II is hereby dismissed. It is further

ORDERED, ADJUDGED AND DECREED that final judgment be, and the same is hereby entered on the Counterclaim in favor of Counterdefendant, Goldstein, Buckley, Chechman, Rice & Purtz and against the Counter-Plaintiff, Morton A. Goldberg. The Counterclaim to collect a debt is hereby dismissed with prejudice.